IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| PHILLIP CURTIS YOUNG #658517 | § | |
| v. | § | CIVIL ACTION NO. 6:05cv348 |
| MS. L. HUDDLESTON, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

    The Plaintiff Phillip Young, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se,* filed this lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. §636(c).

    An evidentiary hearing was conducted on February 23, 2006. At this hearing and in his complaint, Young testified that he owned a house in Fort Worth which he was trying to sell. Young says that he received a letter from the title company, Land America Commonwealth Title Company, which was mailed on April 6, 2004, but which the unit mailroom says was received by them on April 12, 2004. However, Young says that this letter was stamped "next day air," so it had to have been received by the mailroom on or around April 7; Young says that this shows that his mail was wrongfully held by mailroom personnel for almost a week.

    Young says that Huddleston, the mailroom supervisor, contacted the title company and told them that he, Young, was a mental patient and thus incompetent to sign papers or make decisions.[1] He points to a letter which his niece, Daisy Gray, sent to him, in which she said that the title company told her that someone from the prison told them that, Young, was incompetent to sign

---

[1] Young was housed at the Skyview Unit, which is a mental-health facility, but explains that he was simply working there, and was not a patient.

1

papers or make any decisions, and that the only thing she knew to do was get a court order declaring her as his guardian.

In a second letter, Gray backtracks somewhat, saying that she figures that the title company asked what kind of place the prison (Skyview) was and if Young was an inmate there, and that when they learned that he was housed there, they, the title company, figured that he was a patient and thus not capable of making decisions. Gray notes that she talked to Warden Morris, who told her that Young was not a patient but a worker.

Young notes a letter which he received from the title company saying that the company was in possession of a power of attorney which he signed in favor of Gray. This letter says that the title company needs a letter from Young specifically approving of the sale of his interest in the property. A return envelope was sent, and the letter which Young received has a note sticker saying that the envelope is being held in the mail room. This letter is dated April 6, 2004.

Sometime after this letter was received, Young says, either the title company contacted the prison, or someone in the prison contacted the company, to notify them that he was allegedly incapable of making decisions. From this time forward, he says, the title company became reluctant and suspicious of Young's mental condition, and cancelled the contract on the house. Young was not sure who told the title company of this, although he says that it may have been someone in the mailroom or possibly Ms. Weathers, the warden's secretary. Young said that he did not know what had happened with the sale of the house.

After the hearing, Young asked for and received permission to send documents to the Court, including copies of letters he received from Gray as well as the title company. A letter from Gray, dated April 10, 2004, reads as follows:

> Philip - I wrote you a few days ago (4-8-04). But the next day the man who's trying to buy the house called me. The title company (the place that a person can get a loan to buy a house) the man is getting a new loan on the house. Well, anyway the title company asked me about you - your info, about where you are, just to verify that you are alive and everything. Well, the prison warden there told them that you are mentally <u>incompetent</u> to <u>sign papers or make any decisions</u>. I was shocked. Phillip, I didn't know that you were in a prison for mental people. What's going on with you? Why didn't you tell me. Now they <u>won't</u> proceed with the sale of the house.

> The only other option that I know of is to get a court order to say I'm your legal guardian. But what about Jerrie? I just don't know – have you talked to her?
>
> Well, anyway, maybe you can figure something out from your end. I just wasn't prepared for this, though. I thought would about through with the house by now [sic].

A second letter from Gray, dated May 24, 2004, reads as follows:

> Hi Phillip! Hope you are well. Everything's OK here. Me, well, I'm well but very busy. I thought about visiting with you, but I looked directions [sic] there, it's over 3 hours long, about 158 miles, but Beverley and I wanted to visit you and Bridgett on the same day. We're working on that.
>
> Anyway, I received your letter. Phillip, I wanted to explain (if you don't already know, maybe you do) how buying a house works. It's not an easy, quick process (it can be quick if everything is in order with no problems or questions) like our case. The title company or mortgage company lends money to a potential buyer to buy a house or property, and they will not lend money until all questions or problems are solved. I have not talked with them yet, because the guy (salesman) is supposed to be the in-between person.
>
> I called and talked with the assistant warden, Morris, she told me (after I explained the problem we were having) and she told me to write or have you write that "you were not a part of the mentally handicapped" and that you were transferred there only as a worker and you were part of the "general population." And I did do that. Also she said that you could do it also, you needed to go to the law library, write it up, have witnesses sign it. Can you do this? As far as getting a name of who called who – it seems maybe a miscommunication / misunderstanding mostly.
>
> I don't know how or what the title co. said when they called. They were supposed to find out if you were there and alive. But I will call the title co. myself and try to get this solved on my end. The power of attorney is not enough for them to continue. I'm doing my best to get this over with.
>
> Update - I just got off the phone with the (salesman). I told him to call and talk to Assistant Warden Morris, or Warden Foxworth.

The letter continues as follows:

> I figure they asked what kind of place it was and if you were an inmate there. So they were told yes. So from there they figured that you were a patient and incapable of making a decision. I talked to the salesman he said they talked to someone in the mailroom. I him that was crazy - how could they get the right info from someone in the mailroom. I recently called myself and talked to assistant warden Morris, she told me that you were not a patient, [but] a worker, part of the general population.
>
> I related this info to the title company and they called the number I gave them and talked to the right people and were told the right info. So maybe this will work. I don't know what the title co. will do. I'm working through the salesman. When I hear something, I will relate to you. I can't make these people loan money on that house. They probably will, when they feel that it is safe to loan money on the house.

> They have to make sure that if they loan money on any deal, that it won't come back on them in a lawsuit.
>
> With you being in prison, and where you are, even though I provided all the information and papers, they are still hesitant. I've gotten on the salespeople too. I'm ready to be through with this too. As I said, if we can't deal with this title co., we'll have to deal with another.

Young has a copy of a letter from Commonwealth Land Title Co., dated April 6, 2004, reading as follows:

> Dear Mr Young: We are processing the sale transaction on the above referenced property. We are in receipt of a copy of an executed power of attorney signed by you in favor of Daisy Gray. One of our requirements to close the said transaction is we will need a letter from you specifically approving the sale of your interest in the property by your attorney in fact.
>
> I have enclosed a letter for your review and approval. Please sign the said document before a Notary Public. Upon execution of the document, please return the original to our office in the enclosed prepaid UPS envelope.

This letter has a handwritten note on the upper corner saying that the return envelope is being held in the mailroom for when Young got ready to send the letter back.

Next, Young has a letter to Gray from Douglas King, an investigator with the Patient Liaison Program in Huntsville. King writes as follows:

> Dear Ms. Gray - Your correspondence addressed to the TDCJ-CID Office of the Ombudsman was forwarded to the Patient Liaison Program for investigation and response to the medical issues raised. In it, you requested confirmation that Offender Young was assigned to the Skyview Facility as a worker, and not as a patient. Upon receipt, the facility medical department was contacted, a Release of Information was obtained, and the offender's medical record reviewed.
>
> Review of Institutional Division records reflects that Offender Young is currently assigned to the Hodge Facility.[2] Further review of the medical records fails to locate documentation of any mental health-related diagnoses for Offender Young. There is no documentation that Offender Young has been assigned to the Skyview Facility since his TDCJ receive date of 02/03/1994.

Finally, Young has a letter dated May 6, 2004, headed To All Concerned, which reads as follows:

> This a statement of fact, concerning Phillip C. Young, TDCJ No. 658517. Phillip C. Young was transferred to facility as a Worker Only. He is part of what we call the

---

[2]The Hodge Unit, like the Skyview Unit, is located in Rusk and is a mental-health facility. Young's Step Two grievance says that he is at the Hodge Unit, but refers to the "Skyview/Hodge mailroom," and the response refers to the Skyview mailroom.

> "General Population" and not part of mentally impaired group. He has stated that he is trying to sell his house, but has had problems because of his incarceration so this letter is written in hopes that it will clear up any and all misunderstandings concerning Mr. Young. Please feel free to call 903-683-5781 to confirm this fact.

One copy of this letter has a handwritten note on it from Daisy Gray, saying that Young is to sign it and to get some guards and witnesses to sign it, and then send it back to her. Gray says that she called and talked to a lady on the phone who told her to type this up and take it to the law library. However, Young has another copy of the letter, on which he wrote simply "they refused."

Legal Standards and Analysis

Young's primary complaint appears to be that someone at the prison told the title company that he, Young, was mentally incompetent and unable to sign papers or execute a contract. However, the letters which Young furnished to the Court that what happened was a misunderstanding - the title company learned that the Skyview Unit was a mental facility, and assumed that because Young was there, he must be a patient. Although Gray says initially that the prison warden told the title company that Young was incompetent, it should be kept in mind that Gray was not a party to that conversation and thus lacked personal knowledge as to what the warden told the title company. The result of the conversation was that the title company assumed that Young was incompetent, but as the second letter says, this may have been the result of drawing an inference from his unit assignment rather than from being told this directly by a prison official.

More pertinently, even if the warden or some other prison official did tell the title company that Young was incompetent, Young has failed to show that this amounted to a violation of his rights under the Constitution of the United States. The Fifth Circuit has held that to obtain relief under the Civil Rights Act, 42 U.S.C. §1983, a person must show two elements. These are: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was done by a person acting under color of state law. Johnson v. Dallas Independent School District, 38 F.3d 198, 199 (5th Cir. 1994).

The Supreme Court has explained that many acts which may be actionable as violations of state tort law do not amount to constitutional violations. Baker v. McCollan, 443 U.S. 137, 146

5

(1979). Examples of state torts which do not amount to constitutional violations include libel and slander. Geter v. Fortenberry, 849 F.2d 1550, 1556 (5th Cir. 1988); Cook v. Houston Post, 616 F.2d F.2d 791, 794-95 (5th Cir. 1981). To the extent that Young may claim that he was slandered by the alleged reference to him as a mental patient when in fact he is not, this claim does not raise a constitutional issue.

Young also contends that the Defendants interfered with his contractual agreement to sell his house, by allegedly providing this inaccurate information to the title company. Even if true, however, such a claim would amount only to the tort of interference with contractual relationships. *See* Restatement (2nd) of Torts, §768 (1979); *cf.* C.E. Services Inc. v. Control Data Group, 759 F.2d 1241, 1248-49 and n.10 (discussing interference with contractual relationships in terms of a tort under Texas state law). In his complaint, Young says that there was a reasonable probability that he would have entered into a business relationship with a third person, the Defendants intentionally interfered with the relationship, the Defendants' conduct was independently tortious or unlawful, the interference was the proximate cause of his injury, and he suffered actual injury. This generally sets out the elements of the state-law tort of interference with a prospective business relationship. *See* Baty v. Protech Ins. Agency, 63 S.W.3d 841, 860 (Tex.App.-Houston [14th Dist.] 2001, no pet.). This also is a state tort which does not rise to the level of a constitutional deprivation.

Young indicates that someone at the prison told the title company that he was a mental patient in an effort to be named as his guardian. He offers no evidence of any such motive, nor is it clear how an official at the prison could even possibly be named as his guardian. Even were this the case, however, such an effort would be an attempted conversion, which once again is a tort under Texas state law and not a violation of rights protected by the Constitution or laws of the United States. *See* Restatement (2nd) of Torts, §222A (1965) (defining "conversion" as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay to the other the full value of the chattel.") This claim fails to show any federal constitutional violation.

Young complains that his mail was held up by the mailroom, saying that a letter was sent on April 6 but was held for almost a week. He bases this claim on the fact that the letter was sent on April 6 by next day air, but he did not receive it until April 12. However, Young has not shown that this delay prejudiced his legal position with regard to the sale of his house. This delay occurred in April, but over a month later, in May of 2004, Gray wrote to Young and told him that the incident was a misunderstanding and she was working to get it resolved. Gray specifically says that the title company contacted the prison and was given the correct information. The Fifth Circuit has held that an isolated delay in the processing of mail, which does not prejudice a prisoner's legal position, does not amount to a constitutional violation. Richardson v. McDonnell, 841 F.2d 120, 122 (5th Cir. 1988).

Young says that he suffered "mental anguish" and "humiliation" that he never should have had to experience. 42 U.S.C. §1997e(e) provides that

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Young has not shown that he suffered any type of physical injury, and therefore cannot recover in a federal civil rights lawsuit on a claim that he suffered emotional distress.

Finally, Young says that he does not know what happened with the sale of the house, but then asserts that "a family member" disappeared with a substantial amount of money entrusted to her, a circumstance which Young says was "due to the fact that the erroneous information relayed by prison staff and official (warden) caused a frustrated and discouraged situation for the plaintiff's niece which caused her to neglect the plaintiff."

Public records for Young's house, from the website of the Tarrant Appraisal District, show that he and Daisy Gray owned the house between 1995 and 2004. On June 29, 2004, a few months after the incidents forming the basis of this lawsuit occurred, the house passed into the ownership of a company called Vera Homes, LLP, and an individual named Nathan Garza. *See* http://www.tad.org/Datasearch/re.cfm?Account=%28%2E%214KK%3D%242JPD%20%0A.

Young fails to show any connection between information relayed from prison officials to the title company and the subsequent actions of his niece. Even if someone at the prison gave inaccurate information to the title company, Gray's subsequent disappearance with the money, as Young alleges, is hardly a foreseeable consequence of this. In addition, the Tarrant County records make clear that even if the prison officials provided erroneous information to the title company, as Young asserts, this did not prevent the sale of the house, which sale was consummated in June of 2004. Whether or not Young has any state-law claims against Gray for her actions prior to, during, or after the sale of the house, these actions cannot be ascribed to or blamed on the prison officials. Young's claim on this point is without merit. He has failed to show any basis for a federal civil rights lawsuit.

Supplemental Jurisdiction

The doctrine of pendent jurisdiction (now known as supplemental jurisdiction) is codified in 28 U.S.C. §1367, for all civil actions filed on or after December 1, 1990. See Public Law 101-650, Section 310(c); Whalen v. Carter, 954 F.2d 1087, 1097 n.10 (5th Cir. 1992).

28 U.S.C. §1367(a) reads as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Subsection (b) refers to actions filed under diversity jurisdiction and thus is not applicable in this case. Subsection (c) reads as follows:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1)   The claim raises a novel or complex issue of State law;
>
> (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> (3)   the district court has dismissed all claims over which it has original jurisdiction; or

8

      (4)    in exceptional circumstances, there are compelling reasons for declining jurisdiction.

In this case, the Court acquired original jurisdiction based on the plaintiff's claim of a violation of federal law under 42 U.S.C. §1983. Baker v. McCollan, 443 U.S. 137 (1979). However, the plaintiff failed to show a constitutional violation; instead, his complaint consisted entirely of state-law matters. Thus, there was no valid basis for original jurisdiction. This Court therefore declines supplemental jurisdiction over the plaintiff's state law claims, deferring instead to the laws and judicial processes of the State of Texas. 28 U.S.C. §1367(c)(3); Slaughter v. Allstate Insurance Co., 803 F.2d 857 (5th Cir. 1986) (supplemental jurisdiction should not ordinarily be exercised where there is no federal claim). Because the Court declines supplemental jurisdiction over the state law claims, the statute of limitations on such claims is tolled from the date the lawsuit was originally filed until thirty days after the final judgment dismissing the action is entered on the docket. 28 U.S.C. §1367(d).

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke, 490 U.S. at 327, *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Young's claims lack any arguable basis in law under Section 1983 and are based upon an indisputably meritless legal theory insofar as he seeks to proceed under the Constitution of the United States. For this reason, his lawsuit may be dismissed. It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED as frivolous with prejudice as to its refiling in federal court, but without prejudice as to any relief under state tort law which Young may seek in the courts of the State of Texas. It is further

ORDERED that the statute of limitations on Young's state law claims be and hereby is TOLLED from the date that the lawsuit was originally filed until 30 days after the date of entry of final judgment in the case. Finally, it is

ORDERED that any and all motions which may be pending in this cause are hereby DENIED.

So **ORDERED** and **SIGNED** this **22** day of **March, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE